RECEIVED
MAR 21 2008
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

# United States District Court
## for the
## District of Alaska

### Petition for Warrant or Summons for Offender Under Supervised Release

Name of Offender: PANKRATZ, Alexander "Dean"      Case Number: 3:05-cr-0116-JWS

Sentencing Judicial Officer:    John W. Sedwick, Chief U.S. District Court Judge

Date of Original Sentence:    May 26, 2006

Original Offense:    False Statements in Application of Passport, Identity Theft, Social Security Fraud, Failure to Pay Legal Child Support Obligations

Original Sentence:    18 months imprisonment on each count; all terms to be served concurrently; three years supervised release on Counts 1 - 3, and one year on Count 4, all terms to run concurrently

Date Supervision Commenced:    May 17, 2007

Asst. U.S. Attorney: Audrey Renschen      Defense Attorney: Richard Curtner

---

### PETITIONING THE COURT

[ ]    To issue a warrant
[X]    To issue a summons

The probation officer believes that the offender has violated the following condition(s) of supervised release:

| Violation Number | Nature of Noncompliance |
| --- | --- |
| 1 | The defendant has violated the Special Condition of Supervision, "During the period of supervision the defendant shall pay restitution in monthly installments of not less than 10% of the defendant's gross monthly income or $25, whichever is greater," that on or about the months of July, September, December, 2007, and February 2008, the defendant failed to make any restitution payment. This violation is a Grade C violation. |
| 2 | The defendant has violated the Standard Condition of Supervision, "The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training or other acceptable reasons," in that the defendant has not worked regularly and has only been employed for approximately two months out of the nine months since commencing supervised release; specifically, approximately one month, June, 2007, at the Howard Johnson Inn, and approximately one month, mid-December, 2007, through mid-January, 2008, at the Carr's/Safeway Store. This violation is a Grade C violation. |

| | |
|---|---|
| 3 | The defendant has violated the Standard Condition of Supervision, "the defendant shall notify the probation officer at least ten days prior to any change in residence or employment," in that on or about September 5, 2007, the defendant changed residences without informing his probation officer. This violation is a Grade C violation. |
| 4 | The defendant has violated the Special Condition of Supervision "In addition to submitting to drug testing in accordance with the Violent Crime Control and Law Enforcement Act of 1994, at the discretion of the probation officer, the defendant shall participate in a program approved by the United States Probation Office for substance abuse treatment, which program shall include counseling and/or testing to determine whether the defendant has reverted to the use of drugs or alcohol," in that on September 18, 2007, the defendant failed to report for a scheduled drug test. This violation is a Grade C violation. |
| 5 | The defendant has violated the Special Condition of Supervision "In addition to submitting to drug testing in accordance with the Violent Crime Control and Law Enforcement Act of 1994, at the discretion of the probation officer, the defendant shall participate in a program approved by the United States Probation Office for substance abuse treatment, which program shall include counseling and/or testing to determine whether the defendant has reverted to the use of drugs or alcohol," in that on July 31, 2007, the defendant failed to report for a scheduled drug test. This violation is a Grade C violation. |

U.S. Probation Officer Recommendation:

The term of supervised release should be:

    [ ]   Revoked
    [ ]   Extended for _____ year(s), for a total term of _____ years.

[ X ]   The conditions of supervised release should be modified as follows:

"The defendant shall reside at the Cordova Center Residential Reentry Center (RRC) for a period of time not to exceed six months and shall abide by the rules and regulations of the Cordova Center. The defendant shall be eligible to release for employment, treatment, court hearings, medical treatment, and other releases allowed by the rules of the Cordova Center in accordance with their program. If the defendant is able to secure employment and a suitable residence prior to the end of the six month period, the defendant shall be released from the Cordova Center at the discretion of the probation officer."

Petition for Warrant or Summons
Name of Offender        :        PANKRATZ, Alexander "Dean"
Case Number             :        3:05-cr-0116-JWS

Respectfully submitted,

**REDACTED SIGNATURE**

Timothy M. Astle
U.S. Probation/Pretrial Services Officer
Date: March 19, 2008

Approved by:

**REDACTED SIGNATURE**

Eric D. Odegard
Supervising U.S. Probation Officer

THE COURT ORDERS

[ ]   *The WARRANT FOR ARREST be delivered to the U.S. Marshal's Service; and the petition, probation officer's declaration, and a copy of the warrant shall be sealed in the Clerk's file and disclosed only to the U.S. Attorney for their official use, until the arrest of the offender.* The petition for supervised release revocation is referred to the Magistrate Judge for initial appearance/preliminary hearing(s). The evidentiary hearing, if any, will be before the Magistrate Judge only upon consent; otherwise the evidentiary hearing will be before the undersigned District Court Judge.

[ X ]   The issuance of a summons. The Petition for Supervised Release revocation is referred to the Magistrate Judge for initial appearance/preliminary hearing(s). The evidentiary hearing, if any, will be before the Magistrate Judge only upon consent; otherwise the evidentiary hearing will be before the undersigned District Court Judge.

[ ]   Other:

**REDACTED SIGNATURE**

John W. Sedwick
Chief U.S. District Court Judge

3-20-08

Date

**Supervised Release Cases:** Pursuant to 18.U.S.C. § 3401(I), the sentencing District Court may designate a Magistrate Judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the Court proposed findings of facts and recommendations, including disposition recommendations.
**Probation Cases:** Pursuant to *United States v. Frank F. Colacurcio,* 84 F.3d 326, a Magistrate Judge has the authority to conduct a probation revocation hearing **only if** the following three conditions are satisfied: (1) the defendant's probation was imposed for a misdemeanor; (2) the defendant consented to trial, judgment, and sentence by a Magistrate Judge; and (3) the defendant initially was sentenced by a Magistrate Judge. Therefore, a District Court **may not** designate a Magistrate Judge to conduct revocation hearings on probation cases where a District Court was the sentencing Court.

# United States District Court
for the
# DISTRICT OF ALASKA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case Number: 3:05-cr-0116-JWS |
| ) | |
| vs. ) | DECLARATION IN SUPPORT OF PETITION |
| ) | |
| PANKRATZ, Alexander "Dean"  ) | |

I, Timothy M. Astle, am the U.S. Probation Officer assigned to supervise the Court-ordered conditions of supervised release for Alexander "Dean" Pankratz, and in that capacity declare as follows:

On May 26, 2006 the defendant was sentenced to 18 months imprisonment, with three years supervised release, for the offenses of False Statement in Application of a Passport, in violation of 18 U.S.C. § 1542, Identity Theft, in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D), Social Security Fraud, in violation of 42 U.S.C. § 408(a)(7)(B), and, Failure to Pay Legal Child Support Obligations, in violation of 18 U.S.C. § 228(a)(3). The defendant's term of supervised release commenced May 17, 2007, and included conditions requiring the defendant to cooperate in the collection of DNA, seek and maintain steady employment, participate in substance abuse treatment, submit to warrantless searches, provide the probation officer with access to any requested financial information, and not possess a firearm, destructive device or other weapon.

On May 17, 2007, the defendant released from the Cordova Center Residential Reentry Center (RRC). On May 21, 2007, the defendant met with then supervising U.S. Probation Officer (USPO) Beth Mader. The defendant was residing temporarily with friends in Anchorage and had recently become employed at the Howard Johnson's hotel. A follow-up appointment was scheduled for June 5, 2007.

On June 5, 2007, the defendant reported to USPO Mader and a payment plan was signed by the defendant which obligated the defendant to pay monthly payments of ten percent of his gross monthly income or $25, whichever was greater[1].

---

[1] According to the Financial Litigation Unit, as of March 17, 2008, the defendant has made a total of $175 in payments ($150 since commencing supervised release), and has a current outstanding balance owed to the victims in this case of $49,964.14. Payments made by the defendant since commencing supervision include the following: (1) $50 on 08/20/2007; (2) $50 on 10/01/2007; (3) $25 on 11/21/2007; and, (4) $25 on 01/07/2008. Therefore, the defendant failed to make minimum monthly payments of $25 for the months of June (the month he signed the agreement), July, September, December, 2007, and February, 2008.

**Declaration in Support of Petition**
*PANKRATZ, Alexander "Dean" - 3:05-cr-0116-JWS*

On or about June 11, 2007, the defendant's supervision was transferred to this officer, USPO Tim Astle. This officer met with the defendant and was informed by the defendant that he had changed his residence to the Backpack Inn, and that he was continuing to work at the Howard Johnson's Hotel, but was also looking for other work.

On June 18, 2007, this officer called the defendant to discuss his case and written monthly report, which did not include any paystubs. The defendant was informed that this officer must see the defendant's paystubs to insure that he is employed as well as to see if child support is being garnished. During this conversation, the defendant reported that he had a hernia and it needed to be operated on. Therefore, the defendant was unable to work pending an operation on his hernia. When asked about the cost of an operation, the defendant indicated that Assets, Inc., had been contacted and due to his financial situation, the defendant was eligible for assistance from Assets, Inc. for the medical treatment. The defendant was instructed to bring documentation from his doctor to verify this information and to also bring a letter or other documentation from Assets, Inc. to reflect their intention to pay the defendant's medial bills as a result.

On June 25, 2007, this officer met with the defendant. The defendant's conditions of supervision as found in his judgment were read, reviewed, and signed. The defendant provided a note from his physician which indicated, "patient should not lift > 20 lbs until he gets hernia repaired." This officer informed the defendant that this did not indicate he could not return to work, only that his duties and responsibilities would be limited per his doctor's note. However, the defendant reported that he was no longer working for Howard Johnson's and that he was taking his doctor's note to them in order to claim his last paycheck. In addition, this officer informed the defendant that he must make monthly payments of at least $25 toward restitution in this case even if unemployed. Then, when employed, he must pay 10% of his gross wages (unless his gross wages are less than $25) regardless of what child support is garnishing. Further, this officer provided the defendant with an Application for a Reduction in Garnishing from Alaska Child Support Enforcement, but the defendant stated he would not complete it as he was told by CSED that even if approved they will not reduce his garnishment any less than 50% of his gross monthly wage, which according to the defendant was still too much; the defendant believed that his checks should only be garnished approximately 10% a month. The defendant was informed that there is nothing more the probation service with regard to the amount of money CSED garnishes from the defendant's paychecks.

Finally, the defendant informed this officer that he might want to go to Oregon to find a job and USPO Mader said he could go for up to 90 days. This officer informed the defendant that he must have a residence and employment already secured as well as a solid restitution payment history in order for probation to entertain a request for transfer of supervision to another district. The defendant was encouraged to focus on finding a job here in Alaska and begin making regular payments toward restitution for the immediate future.

**Declaration in Support of Petition**
*PANKRATZ, Alexander "Dean" - 3:05-cr-0116-JWS*

On July 18, 2007, this officer received a copy of an Order in State of Alaska case 3AN-85-15668 CI. The Order was in response to a motion filed by the defendant requesting that his child support payments be decreased. The motion was denied. On this same date, this officer received a voice mail message from the defendant reporting that he had his hernia surgery earlier that day and was at home recovering.

On August 8, 2007, the defendant left this officer a voice-mail message requesting permission to transfer to Arizona in October or November 2007 based on all of the employment opportunities in that area.

On August 22, 2007, this officer called the defendant and proceeded to have a long conversation about why he is not a candidate for transfer to Phoenix, Arizona. It was again stressed to the defendant that should he wish to try for such a transfer in the future he needed to first establish a stable residence, maintain employment for an extended period of time, adhere to a consistent restitution payment plan, and exhibit one hundred percent compliance with all of his conditions of supervision. Finally, the defendant was instructed to report regularly on Friday's to provide this officer with where and when and with whom he had applied for jobs with and if/when/where he had any interviews.

On Friday, August 23, August 30, and September 5, 2007 the defendant failed to report as instructed.

On September 7, 2007, probation officers proceeded to the defendant's reported residence and were informed that the defendant had left the residence two days prior.

On September 10, 2007, this officer telephoned the Backpacker's Inn, the defendant's reported residence, and was informed that the defendant had been at the residence the prior evening, but had checked out the morning of September 10, 2007. The defendant's case was staffed with USPO supervisor Eric Odegard. Known violations to date included the defendant apparently changing his residence without providing at least ten days prior notice (Standard Condition #6) and his current whereabouts being unknown, failure to make minimum restitution payments for the months of June, July, and September, 2007, and failure to work regularly at a lawful occupation (Standard Condition #5) as the defendant has not been employed for months of July, August, and September, 2007. It was decided that if the defendant failed to report in any manner by the end of the week, a warrant would be requested for his arrest.

At approximately 4:00 p.m. on September 10, 2007, this officer received a telephone call from the defendant's attorney, Richard Curtner. Mr. Curtner stated that his client had called him stating that this officer would not entertain allowing the defendant to relocate to Arizona. This officer explained to Mr. Curtner the defendant's status on supervision and asked that he encourage the defendant to report to this officer by the end of the week.

**Declaration in Support of Petition**
*PANKRATZ, Alexander "Dean" - 3:05-cr-0116-JWS*

On September 11, 2007, the defendant reported to the probation office and was instructed to report back on September 12, 2007, when this officer would be available.

On September 12, 2007, the defendant reported as instructed and met with this officer. The defendant was informed that this officer was considering a request for a warrant by Friday if the defendant had not contacted this officer by then. The defendant was informed that he has a violation for a missed drug test on July 31, 2007, and when this officer went to his reported residence the prior week this officer was told he no longer lived at his residence and I had not received any notification of a change of residence (violation #2), I had not received a MSR the first five days of the month (violation #3), and his whereabouts were unknown to this officer, which is something that should never happen when the defendant is on paper. The defendant actually took the news rather well with a great deal less complaining, rationalizing or justifying, as he had done in prior interactions.

The defendant brought up transferring to Arizona, but this discussion was quickly quashed. The defendant was informed that when he had a documented record of compliance, as defined by six to eight months of a stable residence, stable employment, consistent reporting for office contacts, UA's, and submission of his monthly supervision reports with paystubs and restitution payments attached, then we may discuss a potential request for transfer to another district. The defendant was informed to focus instead on obtaining verifiable full time employment in Anchorage.

The defendant stated that he was headed to Nine Star to print out his resume and wanted to go to the Carpenters Hall today. The defendant was told that it was good for him to print out some resume's, but he was also instructed to report to the Job Fair at the Egan Center that same date and to report back by the end of the day with all of the information he had obtained, including applications, from the Job Fair. The defendant was told he could drop off his resume at the Carpenters Hall on Thursday or Friday. Approximately two hours later, the defendant arrived back at the probation office with a bag full of information from the Job Fair.

On September 18, 2007, the defendant failed to appear for a scheduled drug test.

On September 19, 2007, the defendant left a voice mail message stating that he did not pass every part (missed one part by only four questions) of the Journeyman level carpenters test so they asked him to return tomorrow at 8:30 a.m. to see if he can re-take that part of the test in order to enter the union at the journeyman level. The defendant stated that the initiation dues were $300, but the union was willing to accept $150 to help the defendant get started. The defendant stated that he will call this officer with an update after he retakes the test tomorrow.

On September 25, 2007, the defendant called this officer stating that he has been studying and will take the journeyman carpenters test again on Thursday, September 27, 2007, at the union. This officer asked the defendant why he had not already retaken the exam and the defendant

4

**Declaration in Support of Petition**
*PANKRATZ, Alexander "Dean" - 3:05-cr-0116-JWS*

stated that he has been studying.  This officer also asked about where he planned to come up with at least the $150 (of $300) needed to join the union once passing the test and the defendant was not sure, only mentioning Personnel Plus might give him a temporary job to raise the money.  Finally, this officer asked the defendant why he could not start working immediately as an apprentice carpenter if he is "so close; only four questions" away from being considered a journeyman level carpenter.  The defendant was told that he could begin working and save the money before taking the journeyman's exam again.

On October 10, 2007, the defendant left a voice mail message for this officer stating that he had passed the Journeyman Level carpenters test.

Through the remainder of October and November, 2007, the defendant left occasional phone messages stating that he had been dropping off resumes for carpenter's jobs.

On December 3, 2007, this officer attempted a home contact at the defendant's residence and met with one of the defendant's roommates.  According to the roommate, the defendant was out driving a white van that was uninsured.

On December 7, 2007, the defendant called this officer to state he was still looking for work.  This officer asked the defendant about the van he was driving around, a van only mentioned by the defendant in his September, 2007, monthly supervision report as "storage only."  The defendant then proceeded to inform this officer that he doesn't always drive the van, but that he had to see a doctor the other day and had to drive in order to get to the doctor's appointment.  This officer informed the defendant that he had broke the law by operating a vehicle that is uninsured and he was instructed to not drive the vehicle anymore until he could provide proof of insurance and registration to this officer.

This officer also asked the defendant about his employment search and mentioned that Lowe's Hardware in South Anchorage was hiring and asked if the defendant had applied.  The defendant stated that he had applied on-line months ago, but had not heard back.  This officer informed the defendant that while he must apply on-line, there is no reason for him to not go down to the store, introduce himself to the manager, and expound on his desire to work at the store.

On December 10, 2007, the defendant reported as instructed.  This officer informed the defendant that he was at the end of his rope in regards to securing employment and that he must secure some kind of employment, even if temporary or part time at McDonald's.  The defendant was informed that even a part time job would exhibit that he was making a genuine effort at securing employment and paying more than the minimum in restitution.  The defendant responded that he is unable be on his feet for an entire shift at some place like

**Declaration in Support of Petition**
*PANKRATZ, Alexander "Dean" - 3:05-cr-0116-JWS*

McDonald's, to which this officer asked the defendant what his expectation was if he were to be hired as a journeyman carpenter. The defendant's response to that question was a shrug of his shoulders.

This officer asked the defendant what he had been doing every day, all day and how he was paying for rent, food, transportation, etc. The defendant stated that he had to ask friends for help. When asked how his friends assisted him, the defendant stated that he borrowed some money from a friend. When asked who his friend was, the defendant responded only with, "Chuck." When asked, "how much?," the defendant replied "$200." This officer further explained that this is another reason that he must obtain employment.

The defendant was presented with a modification of conditions waiver form adding a condition for up to six months in a halfway house in order to afford him a stable residence, food, case management services, and a residence downtown close to the probation office, job service offices, and transportation. The defendant stated that he was not willing to go to a halfway houses and would rather go see the judge than agree to go back to the halfway house. Therefore, the defendant was informed that if he was not employed in some verifiable employment within one week, Monday, December 17, 2007, then this officer would have no other choice than to bring this issue to the attention of the Court with a request to modify the defendants conditions of supervised release to include placement in a halfway house for up to six months.

On December 17, 2007, the defendant reported to the probation office, submitted to a drug test, which was negative, and informed this officer that he had obtained a part-time job at the Carr's/Safeway grocery store on Huffman Road. The defendant stated that he would be working primarily a swing shift three or four days a week as a service station attendant at the gas pumps. This officer congratulated the defendant on obtaining employment and asked that he keep this officer apprised of his schedule.

On January 9, 2008, the defendant completed a written monthly report and attached two paystubs from his new job, which reflected 11 hours for one pay period and 12 hours for the second pay period; one week pay periods. The defendant also attached a restitution receipt payment of $25.

On January 17, 2008, the defendant called this officer and stated that the Child Support Enforcement Division (CSED) for the State of Alaska had contacted him and were beginning to garnish his paychecks. The defendant stated that he was looking for a residence closer to town. This officer informed the defendant about an opening at the Oxford House and provided him with contact information for their program. The defendant was also provided with some information on potential jobs this officer found on the Internet/*Craigslist*.

On February 6, 2008, the defendant reported as scheduled to the probation office and completed an Alaska Permanent Fund (PFD) Assignment of Rights and turned in his PFD

Declaration in Support of Petition
*PANKRATZ, Alexander "Dean" - 3:05-cr-0116-JWS*

application, which this officer mailed for the defendant.

On February 14, 2008, the defendant left a voice mail message for this officer stating that he had been terminated from his employment at Carr's/Safeway after being accused of shoplifting. According to the defendant, the store throws away doughnuts after 8:00 p.m. each evening, but when he's throwing them away, he sometimes would eat some, which the store considered shoplifting.

During the next four weeks the defendant left numerous voice mail messages for this officer indicating that he was just checking in and had not found any employment yet. On March 12, 2008, the defendant called this officer from Lowe's Hardware Store where he was just checking on jobs. This officer informed the defendant that another month had passed and he was still unemployed. Again, this officer provided the defendant with voluntarily agreeing to a modification of his conditions to include a halfway house placement in lieu of going back before the Court. The defendant stated very clearly that he would not go to the halfway house.

On March 17, 2008, this officer staffed the defendant's case with probation supervisor Eric Odegard and the decision was made to file a Petition with a request for a Summons to bring the defendant's behavior to the Court's attention and request assistance for the defendant in the form of a modification of conditions.

Executed this 19th day of March, 2008, at Anchorage, Alaska, in conformance with the provisions of 28 U.S.C. § 1746.

I declare, under penalty of perjury, that the foregoing is true and correct, except those matters stated upon information and belief, and as to those matters, I believe them to be true.

**REDACTED SIGNATURE**

Timothy M. Astle
U.S. Probation Officer

7